is 23-312 United States v. Peppers. And Ms. Nichols for the appellant. You may proceed. Good morning, your honors. My name is Paige Nichols and I represent the appellant, Mr. Dante Peppers. May it please the court, I'd like to focus this morning on the two trial issues beginning with issue one, the constructive amendment of the indictment. Now, there really should be little debate about whether there was a constructive amendment. Even the government agrees that their conspiracy elements instruction was broader than the conspiracy charged and that that broadening instruction alone theoretically allowed the jury to convict Mr. Peppers of an uncharged conspiracy. There was also the government's argument that there were more people involved in the conspiracy, that this 9244 phone number's owner was a main participant, the jurors should consider alternative theories and uncharged conspirators. So I'd like to jump to the more difficult question, which as always in a plain error case, is whether we can meet prong three of plain error on this constructive amendment. And how we conduct prong three of plain error in a constructive amendment case isn't really that different from how we can conduct that analysis in any other case. Miller, the case in which this court reversed a conviction on grounds of a plain constructive amendment, tells us how we do it. Miller found that prong three was met because the court cannot tell whether the jury based its verdict on the charged crime or on an uncharged crime that the instructions allowed it to convict on. Is that like a sufficiency of the evidence inquiry? Just trying to understand how to frame the analysis, whether, you know, the government will stand up and say, well, there is a lot of wrong and evidence of guilt, and you'd look at kind of any rational juror type perspective of the evidence. Should we look at it that way or I think what you're describing, Miller, seems a little different than that. It feels like an easier standard to meet for the defendant here. Well, prong three has never been a pure sufficiency of the evidence analysis. Now, prong three won't be met in cases where the evidence is overwhelming, but if it's just sufficient, that doesn't mean we lose on prong three, and it never has. In fact, in Miller, one of the other issues in the court was whether the charged false statement was, as a matter of law, false. And so there was a kind of separate sufficiency of a matter of law question there, which that defendant lost, but he still won his constructive amendment argument on plain error. So what we're looking for is, in the ordinary case, it's a reasonable probability that the outcome would have been different. Here that would mean that the jury wouldn't have convicted him of the charged offense if it hadn't had these instructions and this argument and evidence that allowed it to convict of an uncharged offense. So when Miller talks about... May I interrupt you a minute on Miller? Yes. That's what I always assumed, that you would have the obligation to prove a reasonable probability, not possibility, but probability of a different outcome, and you've just said that. There's a statement in Miller quoting an earlier case of ours, James, that appears to be more favorable to you. I'm just curious on your take on it. It says, even under plain error, we'll find the constructive amendment occurred when the evidence presented at trial, together with the jury instructions, raised the possibility that the defendant was convicted of an offense other than that charge. That troubled me. I was a little surprised about that. I'm kind of relieved in a way that you're arguing what is a more traditional argument, but I'm sure you've thought about that. You chose not to argue possibility. You've chosen to argue the more conventional probability, and I appreciate that, but I do have trouble figuring out how to get around that statement in Miller. I can sort it out, I think. Well, only if you can do it in 30 seconds. I don't want to take your time. Right. I can do it in 30 seconds. The possibility of a conviction of an uncharged offense goes to whether there was a constructive amendment, the error in the first place. That's at stage one of plain error. Thank you. You've done it beautifully in one sentence. Less than 30 seconds. Wonderful. So, the conversation in Miller about we cannot tell whether the jury based its verdict on the charged or the uncharged crime. We won't presume the jury's thinking, and given that guilt on the charged crime was not overwhelming, the jury might very well have based its verdict on an uncharged conspiracy. It wasn't the focus of trial, though, really, on Millsaps and Howes. That was the core of the prosecution's theory, and maybe there were these other people in the car and there was the mysterious phone number and those sorts of things, but is that really the thrust of what the trial was about? I mean, just because there were these unnamed co-conspirators, is that really a realistic way to view the trial record here? It is in this case because we have evidence that Lindsey Fry's car was at two of the bys and that she herself was definitely at the second by and was probably at the first by. There was a white woman in her car at the first by. We have evidence that the 9244 number comes up in two separate bys, bys two and three, and we only have Mr. Peppers himself present at one by, but nobody can see in the car. Nobody can see who Millsap goes to talk to in the car, and there's nothing found in the car but a smell of marijuana. Well, they don't search the car when they stop the car afterwards. So we have as much evidence about Lindsey Fry and the 9244 person, at least as much evidence about their involvement in those bys as we have about Mr. Peppers' involvement. In a conspiracy, you can have a handful of conspirators, or a couple, at least two, and then they may involve a whole lot of other people to execute that conspiracy. The Chauvin cars participated in bys, and it doesn't mean the conspiracy runs all the way down to all agents and helpers. So how do we know that these other people that you are saying really were part of the conspiracy, couldn't it legitimately be viewed they were simply helpers of the conspiracy as alleged? Right. Just as Mr. Peppers might have been found by the jury, and probably was found by the jury as a mere helper as well. So in the conspiracy situation, you have people who are in on the agreement itself, and then you have aiders and abettors. And the government here encouraged the jury to consider aiding and abetting. And they charged aiding and abetting. They charged, and yes. So with the government pushing aiding and abetting as a theory of conviction for Mr. Peppers, that opened up the possibility there had to have been a conspiracy for him to aid and abet. So if he aided and abetted Millsap's conspiracy with an uncharged conspirator, that is a conviction on an uncharged conspiracy, because it's aiding and abetting an uncharged conspiracy. So the point here is, like Your Honor said, you've got all these people swirling around, these different buys, these different cars. Aiding and abetting, though, I don't see as a constructive amendment, because that was in the complaint all along. So it kind of complicates things. If we just focused on the conspiracy, you're saying that there was more people in this conspiracy than they alleged. The government said that. Should we look at the law differently, depending on whether there's more than you allege that you prove, or whether there are less in there than you approve? Right. Is the standard the test for both, or does one have a harder problem? The one here, the problem here is more difficult, because what it means if the jury... More difficult for whom? For the government, because the grand jury only returned an indictment on an agreement between three specified people. They did not in the indictment say, and others unknown. But they didn't say, and no others, though. They did not say... They said three people agreed. And if four people agreed, it is still true that three people agreed. And there's all kinds of reasons the government might say there is a bigger crime here, but for a variety of reasons we're not charging the bigger crime. Maybe we want to flip, maybe we've got an evidence or a confidential informant or something else. So that's not a surprise. But the government made its choice, and it has to get its instructions and make its argument based on the choice it made. We've known this since Styrone. We've known this in every constructive amendment case this court has decided. They decided to charge a very narrow conspiracy, and even the government agrees that the instructions allowed a conviction of a broader conspiracy than that charge. That's a violation to the Fifth Amendment right of a grand jury indictment. Are those cases distinguishable because they're the prosecutor really hammered home a broader conspiracy, made that a more explicit pitch to the jury than occurred in this case? I don't know how you can get more explicit than the prosecutor in opening statement having a visual aid that says this 9244 person is the main participant, and he's at the top of the chain. Or more explicit than the government urging the jury to look at those aiding and abetting instructions and ask them to consider alternative theories. But when we get to, as we're talking about the problems with this broadened indictment, I want to remind the court that we've argued as well, cumulative error based on the court's exclusion of Millsap's out-of-court statements against interest. And I want to make sure I save plenty of time for rebuttal, but two things I'd like to point out. I think one of the biggest flaws in the court excluding those statements has to do with Millsap's statement out of court that he got marijuana from Mr. Peppers because the district court didn't really address that except when it was addressing the corroboration prong. So we've got a against penal interest prong and a corroboration prong when it comes to statements against interest. And it's quite clear that telling an investigator for the federal defender office who's asking you about a case you were involved in in federal court, that if you tell that person, I committed a crime in addition to the crimes I was charged with, of course he didn't word it that way, I bought marijuana from Mr. Peppers at the second buy. That is a declaration. The theory would be the investigator's going to inform the U.S. attorneys of the potential discrepancy? I'm sorry, I didn't hear the first part of your question. I'm just trying to figure out how this is going to work in real life. So he tells the investigator one thing that's contradictory to what he told the sentencing judge. Then the investigator is going to inform the U.S. attorney and the U.S. attorney then, it's a potential investigation indictment for perjury. Not necessarily just for perjury. On the marijuana part of it, it's a separate crime to possess marijuana. He could be charged in state court, he could be charged in city court. Possessing marijuana in Kansas is a crime. Would that ever happen? Has that ever happened? I'm sure that's not in the record. Has it ever happened that someone's been charged for possessing marijuana? No, no, no. I'm sure, you know, the PD investigators are wearing a couple hats here investigating crimes for her primary case and gets information on another case. Maybe I'm speculating a bit on how frequently your office provides information to the U.S. attorneys to go after people who are involved in criminal cases. If we know what Millsap was thinking, what he was thinking, or what a reasonable person would think in terms of, am I putting myself at risk of exposure? Actually, that was what you successfully got to me or to where I wanted to go. Is that a reasonable fear for a defendant? This court has found statements to be against penal interest even when they were to the person's own lawyer, which was the, sorry, yeah, there's a Lopez case from 1985. It's referenced in the Lozado case. It was error to exclude a co-defendant passenger's statement to his own attorney that happened to be in the presence of the defendant, so there was no attorney-client problem there, that he put, that he alone put drugs in the car. So this court has found, and it doesn't have to be a statement to law enforcement. The statement in Yellow Horse that was found to be against interest was to family members. The statement in Smalls was to a cellmate. So they don't, the statements don't have to be made to law enforcement. They don't have to be made under oath. And I see that I am running low on time, so if I can, I'd like to reserve the rest of my time for rebuttal. You may. Thank you. Okay, Mr. Clark for the government. Thank you. Good morning, Your Honors. Brian Clark for the United States. May it please the Court. The problem with Mr. Peppers' constructive amendment argument is that the government presented only one theory of conspiracy to the jury at trial, and that is that Mr. Peppers conspired with Mr. Millsap to possess and distribute methamphetamine. That conspiracy was charged in the indictment. What was the language in the indictment? Didn't the, did the indictment mention a potential third conspirator? The indictment charged Mr. Peppers with conspiring with Mr. Millsap and Ms. Lori House, together with each other. Exactly. So isn't that contrary to what you just told us? No. So under Williams as well as Davis, all the government had to prove at trial was that the conspiracy involved Mr. Millsap, Mr. Peppers rather, and one or the other of the other two co-defendants, either Mr. Millsap or Mr. House. And that's what the government did. Well, that begs the question. The defense argument is that he was convicted of conspiring with 9244 or Frye or Robinson, and the evidence would permit that finding by a jury, a rational jury. No, I disagree. The evidence would not support that, because, and I think it's important to think about and really drill down on the elements of a conspiracy. Two of the elements that were talked about a lot at trial were an agreement and interdependence. The prosecutor mentioned those in opening and focused on those in closing. There was not evidence of an agreement with respect to some uncharged conspiracy. There was not evidence with respect to interdependence as to some uncharged conspiracy. And I think really, I know Mr. Peppers has done a good job of sort of cherry picking pieces of the record and statements that the closing... I didn't think that she was arguing closing statements. I thought it was just opening statements. I believe it's both, and Ms. Nichols can correct me if I'm wrong, that the aspect of opening that Mr. Peppers is focused on is the chart that the prosecutor showed with the 9244 number. But it's just not correct to say that the government's theory was that the 9244 person connected with that number was some primary component of this. If you look at the prosecutor's closing, he talks about the 9244 number, the person connected with that number, as someone that just sort of a thread that connects all three of the co-defendants, but not someone that was necessary to the conspiracy. And I think just to focus the court, I think the most sort of telling part of the record is where in closing the prosecutor is talking to the jury about what is required for a conspiracy and specifically an agreement. And he asks a rhetorical question, something along the lines of, so what evidence does the government have to show that Mr. Peppers agreed with someone else to violate the federal drug laws? And he answered that question by pointing the jury back to the July 6th, 2020 Facebook messenger messages, which of course were between Mr. Peppers and Mr. Millsap. And they discussed prices and quantities of methamphetamine for buying and selling. So what do we do with the indictment that says that you conspired with others and apparently specifically mentioned Millsap, maybe? Correct. And that is the conspiracy that the, that the government... And also if you could add, you know, the jury instructions allowed a broader interpretation also. That's correct. And, and, and I'm not disputing that the jury instructions did, were technically broader than the indictment, which, but in this case that is not problematic and does not necessarily lead to a constructive amendment. I think Miller actually, I know Mr. Peppers relies on Miller quite heavily. I think Miller is actually better for the government than it is for Mr. Peppers. And the reason is because Miller shows what this court looks at when considering whether there was a constructive amendment. It looks at the indictment. It looks at the jury instructions for sure to see if there's a mismatch of the jury instructions or broader, but it also specifically, this court looks at the evidence that was presented at trial and the statements that the prosecutor made at trial. And in Miller, what was particularly problematic was that the prosecutor presented to the jury two theories of criminal liability for false statement. One of them was charged. The other was uncharged. But the government presented evidence as to both the charged and the uncharged offense. And in closing, the prosecutor told the jury that it could convict on either the charged or the uncharged offense. But, but that's not what we have here. What we have here is a conspiracy, an indictment that charged Mr. Peppers with conspiring with Mr. Millsap. And others. And, and others, sure. But, but to your point, and I think the Williams case from the Supreme Court is, is on point on this, just because a, an indictment may charge others or additional conduct, the, the government only has to prove at trial, you know, it's okay if the government just proves a subset of that criminal activity. So to the, just because the indictment charges a conspiracy between the three co-defendants, the fact that the government proved a conspiracy between two of them is sufficient. And I don't take Mr. Peppers to be disputing that at all. In fact, in his opening brief, he cites the Davis case, uh, alluding to this point that all the government had to do was to prove a conspiracy between, uh, Mr. Peppers and Mr. Millsap. And if that's what the jury convicted on, then that would be sufficient. Why couldn't the jury have believed that, um, Peppers and Fry were conspiring together? You know, she seemed to be in the car there. Why, why, why wouldn't it, why couldn't a jury, based on what was presented at trial, say, okay, those, those two were in cahoots. We don't know where they got the drugs, but they were a team selling it. And that, that's the conspiracy. Why isn't that a rational view of the evidence presented? So it's, it's possible for the jury to have thought that Mr. Peppers and Ms. Fry had conspired, but not without Mr. Millsap. And I think that's the key point. The, the only- But if she was part of the conspiracy, doesn't that, isn't that an ex, a constructive amendment? No, it's not. Because if, if the conspiracy charged, for example, was just between Mr. Peppers and Mr. Millsap- Oh, so you're saying, you're saying it's not credible that there could be a conspiracy between Fry and Peppers without Millsap being- Absolutely. Part of the, part of the- That, that's right. That's right. And, and, and, and the reason is because, uh, the evidence showed and really focused on the entire theory, government's theory, went back to those July 6 Facebook messenger messages where, uh, Mr. Millsap has drug customers. He's looking for drugs. Mr. Peppers has drugs and is willing, uh, to sell them at a particular price. They're negotiating and that, the prosecutor told the jury, was the beginning of the conspiracy and also facilitated the conspiracy. So if perhaps Mr. Peppers was also conspiring with Ms. Fry, in addition to conspiring with Mr. Millsap, uh, that, that does not amount to a constructive amendment. It simply shows that the conspiracy was perhaps broader than what the government charged. But as long as, uh, there's no realistic possibility that the jury found a, uh, a conspiracy that didn't include Mr. Peppers and Mr. Millsap, then there's no constructive amendment. To put it another way, uh, that the evidence only supported one conspiracy in this case and it was the charge conspiracy between Mr. Peppers and Mr. Millsap. And I think, uh, the fact that this, this case is here on plain error review, I think, uh, you know, only helps the government's case. I know, uh, Ms. Nichols focused on prong three of the plain error review and, uh, there was a discussion about Miller and how that's treated. Well, what the court did in Miller on prong three, uh, was to look at whether, uh, there was a reasonable probability that the jury convicted on the uncharged offense and, and would not have convicted on the charged offense. Uh, but, uh, there can be no argument here that there was a conviction on the uncharged offense because again, the evidence only supported one conspiracy. That was the charge conspiracy. The prosecutor, while he made statements about a 9244 number, made statements about other theories of liability. Those, if you read the transcript in context, were just fleeting statements about different aspects of the jury instructions that, uh, you know, were not, did not amount to what you have in Miller or FAR where the government is urging the jury to convict on an uncharged offense. And, uh, and so because the evidence, the evidence established only one conspiracy, the government focused on only one conspiracy and that was the charge conspiracy. There was no, uh, there was no constructive amendment of the indictment. And even if there was, the evidence was very strong as to the conspiracy between Mr. Peppers and Mr. Millsap. I go back to the July 6th, 2020 Facebook messenger messages. Mr. Peppers known involvement, uh, in the second controlled by, uh, his apparent involvement in the first controlled by and, uh, in the, and so based on that, uh, the evidence was conspiracy. I mean, the complaint charged at least three names. Correct. And you're now saying, well, there's good proof about two of those, uh, Millsap and, and how, how Peppers, Peppers or four or five people and you, the government wins if they only prove two of those. Yes, I would point the court to the Williams case from the U S Supreme court and the Davis case. And again, I would just note that I don't think Mr. Peppers is even contesting that. I think he even alludes to that in his opening brief and citing Davis. Well, the problem isn't the number of conspirators. It's the problem is the, those identified in the indictment and permitted under the jury instructions, which is the jury instructions would permit more than the three names identified in the indictment. That is correct. But under Miller under Miller, uh, that's not sufficient, right? It's not sufficient for Mr. Peppers to say, well, the jury instructions were technically broader than the indictment. There has to be a realistic possibility that the jury actually convicted on some uncharged offense. And Mr. Peppers, and again, this goes back to plain error review with respect to the second prong. Uh, he has to point this court to a case that stands for the proposition he's asking this court to adopt, which is that the jury, the jury instructions essentially alone are sufficient to show a constructive amendment. And it doesn't matter that the evidence only proved one conspiracy. It doesn't matter that the government's case really only presented one theory of conspiracy to the jury. Uh, this sort of technical overbreadth of the jury instructions is sufficient. And he just hasn't, can I interrupt you just for a moment? Uh, I'd like your comments briefly on the exclusion of evidence of the Millsap change testimony. Uh, Pelling didn't have much time to argue that you don't have much time to argue it, but I'd like just your quick take on it. And I know it's ordinarily, we're very differential to evidentiary rulings, but that's right. And I think, so a couple of things, one is the standard of your views, abuse of discretion. This court is typically very deferential. Uh, I share what I took to be judge, uh, Timkovich's skepticism that a reasonable person in Mr. Millsap shoes talking to an FPD investigator would think that by, you know, coming up with a story that helped Mr. Pepper, somehow he was putting himself in legal jeopardy. Um, I don't think that's reasonable. The district court didn't think that was reasonable. It made a factual finding to that effect that this court should defer to because it's not a clearly erroneous. So the district court made a factual finding that that it was not reasonable. And therefore I conclude he probably did not have that concern. That's correct. And the reason the district court gave was because, uh, Mr. Millsap court made that second statement. It is not reasonable. And I therefore conclude he did not have that concern. The, I don't recall the, uh, the district court getting into Mr. Millsap's subjective understanding, but there's an objective requirement independently. So, right. So the, and in fact, really the thrust of the 804 B3 inquiry is objective. Now in Lozado, this court said that it can take into account some subjective knowledge of the defendant to in assessing what an objective person in the declarant's shoes would have been thinking. Um, but, but here what the district court said was because Mr. Millsap's case had closed months earlier, a reasonable person in his shoes would not have thought that he was putting himself in any legal jeopardy in making those statements with respect to the marijuana possession crime. Uh, I would just point this court to Lozado and in particular footnote 12 of Lozado where this court said specifically that the likelihood of prosecution is something this court considers in assessing whether a person understands that a statement would, you know, put him in legal jeopardy. And here, Mr. Millsap had no reason to believe that a statement to a FPD investigator that he, you know, possessed a small amount of marijuana was going to end up getting him prosecuted for the crime. So it was critical in your argument that this statement was made to a defender rather than to a prosecutor. I don't know that it's critical, but I think it's part of the mix. I think this court looks to the totality of the circumstances. I think it's probably more important that his case was closed over and done with. I think it's probably maybe even more important that Mr. Peppers and Mr. Millsap had a close relationship. So under Lozado and Morrow, this court can look to and say, well, and this is what the district court said. It looks like Mr. Millsap was probably just trying to help his friend out since his, since Mr. Millsap's own case was already closed. And was that a finding of fact? Does that qualify as a finding of fact? I think so, because, and that's one of the reasons why this court defers to district court's factual findings is because the district court has a much better and broader understanding of what's going on in the case. And so the district court is the one who sentenced Mr. Millsap, dealt with his case, has a good understanding of the relationship between the two, Mr. Millsap and Mr. Peppers. So I think all of those things together, and I also want to say, I know my time is up, if I may make a point about corroboration. There's just no objective evidence that really corroborates what Mr. Millsap was saying. Indeed, what Mr. Millsap seemed to be trying to do was minimize his role in a methamphetamine conspiracy that he had already confessed to and was trying to help his friend out. He said he was selling fake meth, but there was actually real meth. He said they were, you know, all of this happened on the day that they were arrested when really it happened over about a month time in July, not in August when they were arrested. So there are a number of inconsistencies. There just simply are not the type of circumstantial guarantees of trustworthiness that this court looks to under 804B3. With that, thank the court. Thank you, counsel. There was no evidence on the record that Millsap and Mr. Peppers were friends, family members, so close that Millsap would make a statement against interest in order to help Mr. Peppers. In fact, the government said, you know, we thought they had some distant familial relationship, but we don't have any evidence of that, so don't rely on that. And yet the district court made this supposed finding that that was what motivated Millsap. There's no evidence for that, so that is clear error. As for the drugs, would Mr. Millsap have felt that this small amount of drugs was something he could be prosecuted for? Well, in Lozado, as you may recall, that case involved the defendant's statements that he was a drug user, he had drugs in his pocket, and he was also responsible for ammunition in a car. The drugs in his pocket were held to, the statement about the drugs in his pocket were held to be admissible by the district court as a statement against interest. So that was a small amount of drugs in the guy's pocket, and yes, he should have understood, a reasonable person would have Thank you, Council. Appreciate your arguments this morning. You're both excused, and the case will be submitted.